276 So.2d 754 (1973)
FIREMAN'S FUND INSURANCE COMPANY, Plaintiff-Appellee,
v.
UNITED STATES FIDELITY & GUARANTY COMPANY et al., Defendants-Appellants.
No. 4150.
Court of Appeal of Louisiana, Third Circuit.
April 25, 1973.
Gold, Hall, Hammill & Little by Henry B. Bruser, III, Alexandria, for defendants-appellants.
Brittain & Williams by Jack O. Brittain, Natchitoches, Hampton Carver, of Milling, Saal, Benson, Woodward & Hillyer, New Orleans, for plaintiff-appellee.
Before SAVOY, MILLER and DOMENGEAUX, JJ.
SAVOY, Judge.
This is an action by plaintiff, as subrogee of its insured, to recover the sum paid to its insured by virtue of fire damage in its insured's premises, against the defendant storeowner and its insured respectively. After a trial on the merits, judgment was rendered in favor of plaintiff and against defendants, in solido, in the sum of $1,901.97. Defendants have appealed.
*755 After an examination of the record, we conclude that the district judge correctly disposed of the issues, and we hereby adopt his written opinion as our own, to-wit:
"This is a suit by Fireman's Fund Insurance Company, hereinafter referred to as Fireman, against United States Fidelity & Guaranty, and Caplan's Natchitoches, Inc., hereinafter referred to as defendants. Fireman's as insurer of Joseph T. Lewis, d/b/a Lewis' Store, is claiming under a subrogation granted by Lewis to Fireman. Fireman having paid Lewis under an insurance contract for damages suffered by Lewis as a result of a fire that occurred in an adjoining store operated by Caplan's Natchitoches, Inc.
"The evidence shows, without serious dispute, the following facts:
"Lewis and Caplan's stores are housed in the same building in Natchitoches, Louisiana. On the late afternoon of Friday, July 3rd, 1970, at about 7:15 P.M. the Natchitoches Fire Department was notified of dense smoke coming from the front of Caplan's Store. The manager, Ronald Quimby, was notified, and he hurried to the store and opened the doors, and the firemen entered and in due course located and extinguished the fire. The fire was confined in an open storage space on the northwest corner of the Caplan's store and immediately adjacent to the Lewis' Store.
"The firemen described the fire as being confined to a mound of papers consisting of some stacked suit boxes and trash papers. Since the area where the fire originated was next to the wall separating the two stores, the Lewis' Store was filled with dense smoke but very little other damage. Prompt action of the owner of Lewis' Store, after the fire was extinguished, by removing the accumulated smoke through the use of large fans, reduced the damages that his merchandise suffered. The total amount here claimed is $1,901.97. Lewis' stock inventory was in excess of $40,000.00.
"On the afternoon of Friday, July 3, 1970, Ronald Quimby, as manager of Caplan's store remained within the premises after closing time of 6:00 o'clock P.M. The only other employee in the store just prior to closing was Jim McConnell. The other four employees had left at various times prior to the closing time. McConnell left Quimby in the store at 6 P.M. because Quimby was waiting on a customer. Quimby testified that he was the last to leave the store. That prior to locking up he made his usual inspection of `all changing rooms, stock rooms, behind counters, etc. to look for persons who might be hiding in the store, to turn off the lights and check for fire or other hazard prior to closing down and locking up for the night'.
"Quimby stated he was not smoking during this checkout. That he was the last one in the storeroom area (where the fire was confined); he saw no one and did not smell or see a fire. Quimby then locked the doors and left the premises by 6:30 P. M. He received a phone call from a man named Melder at 7:14 P.M. and learned of smoke coming from the store. Quimby immediately returned to the store and was there in about five minutes and unlocked the front doors to let in the firemen. It took the firemen several minutes to discover the source of the fire due to the density of the smoke. After location of the source the fire was soon put out and it was confined to the stockroom. Quimby stated he went into the stockroom after the firemen had put out the fire. That only gift boxesspread flatand boxes of socks were stored there and these were burned.
"Quimby stated he and McConnell smoked but neither had to his knowledge smoked or put any cigarettes in the stockroom that day. Quimby stated no other trash was placed in this stockroom area, and he had no idea what caused the fire.
"Rose Sarpy had left the store prior to closing time. She testified that only employees of Caplan's were authorized to go into the stockroom but on some few occasions *756 customers would become confused and wander into the area. She stated that when the store was first opened that `no smoking' signs were placed in this area but for some time prior to the fire they had been removed. She stated she knew of no trash or other debris placed in this area which she stated was kept neat and orderly; only folded up gift boxes were in this area.
"Captain Wayne Attaway of the Natchitoches Fire Department stated a call was received reporting the fire at 7:15 P.M. That after entering the building it was difficult to locate the fire source due to the dense smoke. The fire was put out and as soon as he could see he examined the area. He stated the fire was confined to the area described as the stockroom. That the debris looked like stuff piled up in a corner as if it was paper from a waste paper basketor emptied out of a garbage can. He was unable to determine what caused the fire to start.
"Captain Ray Webb of the Fire Department arrived after the fire was put out. He described the fire area as small and looked like folded up boxes and catalogs that had burned. He stated there was considerable smoke but he did not know what nor was he able to determine what caused the fire. In the area there was no electrical outlets and the walls and floor were of concrete construction.
"Fire Chief Oscar Ray Vails examined the area the following morning, and he was unable to determine the cause of the fire. He found no electrical outlets in the area, and he did not see the debris because it had been removed.
"Joseph T. Lewis was notified of the fire, and he acted as herein before related to clear his adjoining store of the smoke as soon as he was permitted to do so.
"On the basis of the above facts, the plaintiff, Fireman, settled the smoke damage and other costs of Lewis and was subrogated to such claim. Fireman made claim of such amount of defendants, and on their refusal to honor such claim, this suit followed.
"Counsel for the defendant has filed with this Court pretrial and post-trial briefs. In the pretrial brief counsel cited cases which were clearly the controlling jurisprudence and determinative of the rights of plaintiff herein. Such cases held that based on the above evidence, the plaintiff would not be entitled to recover because of the Court of Appeals decisions.
"In the recent case of Boudreaux vs. American Insurance Co., 262 La. 721, 264 So.2d 621 (1972), the Louisiana Supreme Court reversed the 4th Circuit Court of Appeal. This far reaching decision has materially extended the evidential rule of `res ipsa loquitur' as heretofore interpreted and applied by our Circuit Court of Appeals.
"Justice Tate as the writer of the opinion after a rehearing had been granted, states:
"`In this respect, the principle of "res ipsa loquitur" (the thing speaks for itself) sometimes comes into play as a rule of circumstantial evidence, whereby negligence is inferred on the part of a defendant because the facts indicate this to be the more probable cause of injury in the absence of other as-plausible explanation by witnesses found credible. Pilie v. National Food Stores of Louisiana, 245 La. 276, 158 So.2d 162 (1963); Larkin v. State Farm Mutual Auto. Ins. Co., 233 La. 544, 97 So.2d 389 (1957); Malone, Res Ipsa Loquitur and Proof by Inference, 4 La.L.Rev. 70 (1941); Comment, 25 La.L.Rev. 748 (1965). Thus, by this principle where properly applied, the circumstantial evidence indicates that the injury was caused by some negligence on the part of the defendant, without necessarily proving just what negligent *757 act caused the injury.' (Emphasis theirs)
* * * * * *
"`Nevertheless, when all the evidence is in and the question is whether, by reason of the res ipsa loquitur rule, the plaintiff has preponderantly proved that the defendant is responsible in tort for his injury, we have in our most recent decision on the issue noted that the real test of applying res ipsa loquitur to be as follows: "Do the facts of the controversy suggest negligence of the defendant, rather than some other factors, as the most plausible explanation of the accident?" Pilie v. National Food Store, 245 La. 276, 158 So.2d 162, 165 (1963). On the other hand, application of the principle is defeated if "an inference that the accident was due to a cause other than defendant's negligence could be drawn as reasonably as one that it was due to his negligence." 158 So.2d 165. See also Comment, 25 La.L.Rev. 748, 764 (1965). This is simply another formulation of the burden of a plaintiff in a tort action to prove that, more probably than not, his injury was caused by the negligence of the defendant.' (Emphasis theirs)
"This Court has read with interest the comments in `Studies in Louisiana Torts by Wex S. Malone and Leah Guerry (1970)', p. 253 et ff:
"`The first accepted requirement for application of res ipsa loquitur is that the accident must be one which common knowledge indicates does not ordinarily occur in the absence of negligence. This requirement, which assumes that trier of fact has such common or ordinary knowledge of everyday events, is consistent with the fundamental principle of circumstantial evidence that there must be sufficient basis in fact to conclude that one probability is more reasonable than another. Hence res ipsa loquitur is usually applied to cases in which past experience of ordinary events forms a fund of common knowledge from which the court draws to conclude that negligence was more probably present than not * * *.'
"These authors on page 266 of their text state:
"`Once the initial inference of negligence is drawn, the finger of responsibility may be pointed towards the defendant by showing circumstances such as control by the defendant of the presumably most relevant factors at the time negligence probably occurred. The plaintiff should not be required to show that the defendant's negligence caused the injury beyond a reasonable doubt, comparable to the state's burden of proof in criminal cases. It is a question of probabilities, and the extent of defendant's duty will play an important role in reducing the inquiry of the court's to a single one: do the facts and circumstances of the accident suggest negligence of the defendant rather than some other factors, as the most plausible explanation of the accident?'
"The conclusions of these authors written several years ago have been approved by the recent decision of our Louisiana Supreme Court in the Boudreaux case.
"The principles enunciated in the Boudreaux case call on this Court to use its fund of common knowledge of probable causes to be able to conclude that a particular occurrence would not have happened in the absence of negligence attributable to the defendant.
"The evidence in this case shows that the fire started in an area where there was no electrical outlet. This stockroom was being used to store folded up paper gift boxes and some shoe boxes. Defendants' witnesses stated only the gift boxes and shoe boxes were present in the storeroom. This was contradicted by the testimony of Captain Attaway of the Fire Department who stated that there was `stuff' *758 piled up in the corner, and it appeared to be waste paper or as if emptied from a garbage can. Captain Webb described the appearance as `folded up boxes and catalogs'.
"The testimony of the two firemen has convinced this Court that there was in the place where the fire originated debris or trash other than neatly stacked folded up paper gift boxes or shoe boxes.
"The absence of electrical outlets rules out the possibility of an electrical spark causing the fire. There is evidence that two of Caplan's employees were smokers; that the `no smoking' sign in the stockroom had not been in place for some time.
"This evidence reduces the probability as to how the fire started in the locked up area, within less than one hour after the manager locked up the store to: (a) lighted cigarette or similar object (b) spontaneous combustion.
"Either of these causes would infer negligence on the part of Caplan's representatives because the facts indicate this to be the more probable cause of injury `in the absence of other as-plausible explanation by witnesses found credible'.
"This Court, having concluded that the evidence as a whole proves that the cause of the fire and resultant smoke damage to Lewis' store was due to the negligence of Caplan's representative, the plaintiff, Fireman, is entitled to recover such damages as proven.
"By stipulation (Ex. P-1) counsel agree that Fireman's Fund Insurance Company paid to Lewis $621.00. This Court is also of the opinion that plaintiff has by a preponderance of the evidence proven the damages suffered by Lewis and paid by Fireman of the additional sum of $1,380.97 less the $100.00 deducted or the net additional sum paid by Fireman of $1,280.97.
"Therefore the plaintiff is entitled to judgment against the defendants, in solido, for the sum of $1,901.97 plus legal interest from date of judicial demand and all costs."
For the reasons assigned the judgment of the district court is affirmed at appellants' costs.
Affirmed.