# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

**05-989**
**(Consolidated with 05-990, 05-991, 05-992, and 05-993)**


**EDWARD TRENT, JR., ET AL.**

**VERSUS**

**PPG INDUSTRIES, INC., ET AL.**


**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 1999-8503
HONORABLE DAVID KENT SAVOIE, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**MARC T. AMY**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Marc T. Amy, and Glenn B. Gremillion, Judges.


**AFFIRMED.**


**Thibodeaux, Chief Judge, dissents and assigns written reasons.**

**Bradley Charles Myers**
**Charles S. McCowan, Jr.**
**Glenn Michael Farnet**
**Kean, Miller, Hawthorne, D'armond,**
**McCowan & Jarman, L.L.P.**
**Post Office Box 3513**
**Baton Rouge, LA   70821-3513**
**(225) 387-0999**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **Lyondell Chemical Company**

Terrence D. McCay
One Lakeshore Drive - Suite 1600
Lake Charles, LA   70629
(337) 430-0350
COUNSEL FOR DEFENDANT/APPELLEE:
    Lyondell Chemical Company

Thomas M. Bergstedt
Felton Paul Leger
Brian W. Arabie
Bergstedt & Mount
1011 Lake Shore Drive - Suite 200
Lake Charles, LA   70601
(337) 433-3004
COUNSEL FOR DEFENDANT/APPELLEE:
    Olin Corporation

Tina Louise Wilson
Cox, Cox, Filo, Camel & Wilson
723 Broad Street
Lake Charles, LA   70601
(337) 436-6611
COUNSEL FOR PLAINTIFFS/APPELLANTS:
    Edward Trent, Jr., Individually and as
    Administrator of the Estate

AMY, Judge.

In this consolidated personal injury dispute, the plaintiffs alleged that they were exposed to, and injured by, toxic chemicals on the defendants' properties. The defendants filed motions for summary judgment, which the trial court granted. The plaintiffs appeal, asserting two assignments of error. For the following reasons, we affirm.

**Factual and Procedural Background**

The record indicates that Edward Trent, Angelo Honore, Shannon Reed, Elbert Reed, and Darvin Ramirez (the plaintiffs) were employed by Ron Williams Construction Company (Ron Williams). Ron Williams and PPG Industries entered into a contract whereby Ron Williams would build a piperack to traverse the properties of PPG Industries (PPG), Lyondell Chemical Company (Lyondell) and Olin Corporation (Olin). The plaintiffs worked on the piperack project from December 1998 to January 1999. Construction of the piperack included digging holes in which to place the footings of the piperack.

The plaintiffs stated that while the holes were being dug, they noticed that the sub-surface soils were discolored. According to the plaintiffs, strong, pungent odors emanated from the holes. Although the plaintiffs could not pinpoint the smell, they opined that it may have been ammonia. The plaintiffs' job duties included digging holes in which to lay the cement footers for the piperack, helping clean off the auger used to drill holes as it came up out of the freshly dug soil, shoveling soil from around the sides of the holes, shoveling cement into the holes, and cleaning the area of excess soil.

The plaintiffs alleged that the odors made them ill. They experienced various symptoms, which included skin rashes, sinus troubles, burning nasal passages, nose bleeds, dizziness, and feeling sick to their stomachs. According to the plaintiffs, they

reported the odors and their symptoms to Ron Williams' on-site supervisor, Lee Douget. Jamie Venable, Ron Williams' Safety Coordinator, was also informed of the incident. The record reveals that Mr. Venable prepared memos, which documented the plantiffs' complaints and what further action was taken.

The plaintiffs subsequently filed this claim for negligence. Although several defendants were named, only Lyondell and Olin remain as the other defendants have been dismissed from the case. Lyondell filed a motion for summary judgment on the issue of breach of duty of care, which the trial court denied. Olin filed a motion for summary judgment arguing that it did not owe a duty to the plaintiffs; therefore, the plaintiffs could not prove that "Olin's actions constitute[d] a breach of the standard of care." The trial court denied this motion.

Lyondell filed a new motion for summary judgment on the issue of causation, specifically whether the plaintiffs' alleged injuries were caused by an alleged exposure and whether this exposure occurred on Lyondell property. In its motion, Olin argued that the plaintiffs failed to prove that Olin breached a duty owed to them and that they also failed to prove a causal relationship between any alleged exposure and their injuries. The trial court granted Lyondell and Olin's motions for summary judgment. The plaintiffs appeal, designating the following as error:

1. The trial court erred in granting the defendants' Motion for Summary Judgment by finding that because the plaintiffs had not been able to identify the chemical(s) to which they had been exposed, a causal connection could not be made between the exposure and plaintiffs' injuries.

2. The trial court erred in failing to consider the applicability of the doctrine of res ipsa loquitor in this case.

2

**Discussion**

*Summary Judgment*

The plaintiffs argue that Lyondell and Olin were negligent because they did not "test the soil under and around the area in which the plaintiffs would be working to assure that the area was clear of underground contaminants." They claim that during the construction of the piperack across Lyondell and Olin properties, they were exposed to toxic chemicals, and they all suffered similar symptoms. The plaintiffs contend that it would have been difficult, if not impossible, to determine the chemicals to which they were exposed because the holes were filled with concrete after they were dug. The plaintiffs, therefore, argue that the trial court erred in granting the defendants' motions for summary judgment "simply because the plaintiffs could not pinpoint the exact chemical to which they had been exposed." They cite *Housley v. Cerise*, 579 So.2d 973 (La.1991) in support of their argument.

"An appellate court will apply the *de novo* standard of review when reviewing a summary judgment and will use the same criteria that govern the trial court's consideration of whether summary judgment is appropriate." *Lamoco, Inc. v. Hughes*, 02-1498, p. 4 (La.App. 3 Cir. 7/9/03), 850 So.2d 67, 70, *writ denied*, 03-2603 (La. 12/12/03), 860 So.2d 1156. Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(B). A fact is material if it potentially insures or precludes recovery or determines the outcome of a legal dispute. *Istre v. Meche*, 05-303 (La.App. 3 Cir. 11/2/05), 916 So.2d 307.

Louisiana Code of Civil Procedure Article 966(C) provides in pertinent part:

3

(1)  After adequate discovery or after a case is set for trial, a motion which shows that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law shall be granted.

(2)  The burden of proof remains with the movant.  However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense.  Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.

Louisiana Code of Civil Procedure Article 967(B) provides:

When a motion for summary judgment is made and supported as provided above, an adverse party may not rest on the mere allegation or denials of his pleadings, but his response, by affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial.  If he does not so respond, summary judgment, if appropriate, shall be rendered against him.

The record indicates that a hearing on Lyondell and Olin's motions for summary judgment was held on January 6, 2005.  During that hearing, Olin argued that pursuant to their right-of-way agreement with PPG, PPG "assumed the duty to protect and take care of worker safety."  Olin argued, in the alternative, that even if it owed a duty to the plaintiffs, there was no breach of that duty.  The trial court denied the motion for summary judgment, stating:

I am going to deny the motion for summary judgment; but I am putting you on notice, Ms. Wilson [plaintiffs' counsel], that another one is coming pretty soon where you are going to have to present some expert to say that there is some connection, that there is something out there. . . . And I am not going to let this case go to a jury or to anybody on the supposition that because I complained of something --  it ain't going there.

Lyondell also argued that it did not owe a duty to the plaintiffs, and if the trial court finds that there was a duty, Lyondell did not breach it.  Although the trial court

4

denied this motion, it reiterated that the plaintiffs would need to "produce anybody to document where the situation is[.]"

Lyondell and Olin subsequently filed new motions for summary judgment, and a hearing was held on April 19, 2005. Lyondell and Olin argued that the plaintiffs could not prove a number of essential elements of their negligence claim.[1] They referenced the fact that the plaintiffs could not identify the chemicals to which they were allegedly exposed. Furthermore, the plaintiffs did not present any direct evidence that established a causal relationship between the plaintiffs' alleged injuries and the work performed on the piperack project. In an effort to prove that their injuries were caused by a chemical exposure, the plaintiffs offered the opinion of their treating physician, Dr. Thomas Callender, that they were "definitely exposed to something during that time." The record does not indicate that Dr. Callender gave a deposition or submitted his opinion in affidavit form. We note, as the trial court did, that the plaintiffs' medical records were not certified.[2]

In granting Lyondell and Olin's motion for summary judgment, the trial court stated:

> What I have tried to encourage you [plaintiffs' counsel] to do is to go get a soil testing company to dig a hole right next to a footing to see if there is something in that dirt.

---

[1] We note that in order to prevail on their negligence claim, the plaintiffs must prove all five elements of the "duty-risk" analysis. In *Perkins v. Entergy Corp.*, 00-1372, 00-1387, 00-1440, p. 7 (La. 3/23/01), 782 So.2d 606, 611 (citations omitted), the supreme court stated:

> The determination of liability under the duty/risk analysis usually requires proof of five separate elements: (1) proof that the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (2) proof that the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) proof that the defendant had a duty to conform his conduct to a specific standard (the duty element); (4) proof that the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) proof of actual damages (the damages element).

[2] The plaintiffs' medical records are not in the record but simply attached to their brief.

I think that you have that burden of proving that, that there is something in that dirt, because that's your allegations, as we are digging up the hole, we get this stinky smell, the dirt is a different color. Something is wrong with the dirt. Okay?

Your clients are not experts. They can't tell me the difference between sandy lommie [sic] soil, lommie [sic] soil and sandy soil -- or clay or whatever it may be. Somebody has to tell me that they have looked at that dirt and it's dirty dirt.

. . . .

I am satisfied that plenty of time has gone by for something like that to happen, and I see nothing forthcoming. I think you have a burden of proving the causal relationship between something there; and you don't have something there. So, for that basis, I am going to grant motions for summary [judgment] by both defendants.

After reviewing the record, we note that Lyondell and Olin presented evidence in support of their position that the area in which the plaintiffs were working was safe. According to Lyondell, before any work commenced on the piperack project, PPG contracted with Soil Testing Engineers, Inc. to conduct a geophysical analysis of the soils within the right-of-way for the project route. "[F]our soil borings to a depth of thirty feet were conducted on Olin and Lyondell property with no indication in the report of offensive odors, unusual soil conditions, or the presence of any 'toxic or hazardous' substances or materials."

Lyondell also completed an excavation permit prior to construction of the piperack. According to Morgan French, Lyondell's South Region Health, Safety and Environmental Manager, the purpose of the excavation permit is to "identify any hazards that might be out there that someone would run into while they are doing excavation." In his deposition, Mr. French testified that this permit did not identify any hazards; thus, the work could proceed safely. In addition, Lyondell and Olin issued "safe work" permits each day. With regard to Lyondell's safe work permits, Mr. French stated that a Lyondell employee and a Ron Williams representative would go out into the area where work was to be done that day and discuss "the potential

6

hazards that they may encounter, what type of personal protective equipment may be appropriate for the job[,]" etc. None of Lyondell's safe work permits indicated the presence of toxic chemicals or any other hazardous substances. Olin's safe work permits did not indicate that drilling could not be safely performed in the right-of-way area or that there were toxic chemicals in the soil.[3]

Lyondell and Olin have pointed out that there is an absence of factual support for one or more elements essential to the plaintiffs' claim, *i.e.*, the plaintiffs will not be able to prove that Olin and Lyondell breached any duty that may have been owed to them, what chemicals they were allegedly exposed to, or a causal link between the injuries alleged and the work performed on the piperack project. Therefore, the plaintiffs were required to "produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial." La.Code Civ.P. art. 966.

The plaintiffs' deposition excerpts indicate that they smelled strong, pungent odors emanating from the holes that had been dug. They testified that the fumes were ammonia-like in nature. We note that Darren Swisher, Lyondell's Safety Manager, drove along a roadway near the piperack project and smelled what "appeared to be ammonia." He approached the plaintiffs, and they commented on the smell. Mr. Swisher proceeded as follows:

> I then went and obtained ammonia tubes and 'sniffed' in the holes as well as about 1' [foot] above the holes. I was picking up high readings inside the hole, but when I sniffed 1' away from the hole I was not picking up any hazardous levels (well below the OSHA PEL).

Although the plaintiffs *may* have been exposed to ammonia, they have not presented any evidence indicating that the extent of any such exposure was a breach

---

[3] We note that on Olin's safe work permits, one of the items listed is "Excavation Permit Required" and there is a block to check for "Yes" or "No." On several of these permits, the box next to this designation is checked "Yes". When asked what this meant, James Brown, Olin's Director of Environmental Mediation, explained: "It could mean one of two things. I'm not sure if the Lake Charles plant procedure called for a separate excavation permit or whether this Contractor Safe Work Permit served as the excavation permit."

7

of either defendants' duty owed to them or that it was of such a level so as to cause the injuries they complained of. As previously mentioned, Lyondell and Olin's safe work permits did not indicate the presence of any hazardous substances. The plaintiffs further failed to produce any soil samples which prove that the soils in which they were digging were contaminated by toxic chemicals. Neither have the plaintiffs presented any certified reports from physicians confirming that their injuries resulted from exposure to toxic substances. Furthermore, the plaintiffs lack documentation that their injuries were caused by chemical exposure specifically located on the property of either defendant. The plaintiffs simply allege that they were exposed to chemicals along the piperack route. Even if we were to assume that the plaintiffs were exposed to chemicals on the property of both defendants, perhaps the exposure on only one was sufficient so as to cause the complained of injury.

We conclude that the plaintiffs have not met their burden with regard to breach or causation. Therefore, we affirm the trial court's granting of the motion for summary judgment in favor of Lyondell and Olin.

*Res ipsa loquitur*

The plaintiffs argue that the trial court erred in failing to consider the applicability of the doctrine of *res ipsa loquitur* in this case. They contend that "enough circumstantial evidence exists to create a genuine issue of material fact as to the cause of the plaintiffs' injuries that would preclude the granting of summary judgment on this issue."

"[R]*es ipsa loquitor* permits a factfinder to examine the circumstances surrounding an incident and infer negligence on the defendant's part." *Perkins v. Wurster Oil Corp.*, 04-692, pp. 4-5 (La.App. 3 Cir. 11/10/04), 886 So.2d 1229, 1233, *writ denied*, 04-3011 (La. 2/18/05), 896 So.2d 35. "The doctrine merely assists the

8

plaintiff in presenting a prima facie case of negligence when direct evidence is not available." *Cangelosi v. Our Lady of the Lake Reg. Med. Ctr.*, 564 So.2d 654, 665 (La.1989). "[R]es ipsa loquitur is applied after all of the evidence has been presented." *Id*. at 666.

We find that the doctrine of *res ipsa loquitor* is inapplicable here. While ultimately no direct evidence may be available in this case, the plaintiffs have failed to prove that it does not exist or that it has been destroyed. Rather, they appear simply to have not found any direct evidence. In response to the trial court's question as to whether an expert tested the soil on Olin and/or Lyondell property, plaintiffs' counsel stated:

> That wasn't done at the time. We were told by Ron Williams that the footings we [sic] filled with concrete so we couldn't get in there. I understand that we could have gotten to them; and, unfortunately, that wasn't done at the time the claim was made. And it hasn't been done.

We note that as of April 19, 2005, the date of the hearing on the summary judgment motions, the plaintiffs had approximately six years in which to test the soil in the areas where the work was performed. Although the holes were subsequently filled with concrete, the record does not contain any testimony indicating that it would be fruitless to perform testing due to circumstances surrounding the site/sites or due to lapse of time. Accordingly, we find that the plaintiffs' failure to obtain direct evidence does not warrant application of the *res ipsa loquitur* doctrine.

This assignment has no merit.

**DECREE**

For the foregoing reasons, the judgment of trial court granting Lyondell and Olin's motions for summary judgment is hereby affirmed. All costs of these proceedings are assessed equally against the plaintiffs, Edward Trent, Angelo Honore, Shannon Reed, Elbert Reed, and Darvin Ramirez.

**AFFIRMED.**

EDWARD TRENT, JR., ET AL.

VERSUS

PPG INDUSTRIES, INC., ET AL.

THIBODEAUX, Chief Judge, dissenting.

The doctrine of *res ipsa loquitur* is, in my opinion, applicable. The Trent Plaintiffs all allege that strong, pungent odors emanated from the holes where the footings of the piperacks were placed. Some of the men described it as an ammonia-type smell. All of the Trent Plaintiffs were required, as part of their job duties, to assist in the digging of the holes and filling them up with cement. Specifically, they were required to dig holes in which to lay the cement footers for the piperack, help clean off the augur used to drill holes as it came up out of the freshly dug soil, shovel soil from around the sides of the holes, shovel cement into the holes, and then clean the area of excess soil. While there were up to two dozen other men working on the piperack construction project, only the five Trent Plaintiffs were required to come in such close contact with these holes and the soil pulled out of them.

All five men claim that whatever they were smelling made them sick. Reported symptoms included: skin rashes, sinus troubles, burning nasal passages, nose bleeds, dizziness, and feeling sick to their stomachs. One of the Trent Plaintiffs described the smell as unbearable. All five of the Trent Plaintiffs claim that they

complained about, and reported, the odors and their symptoms to Ron Williams's on-site supervisor, Lee Douget. There are also memos in the record from Ron Williams's Safety Coordinator, Jamie Venable, which document the men's complaints.

At some point during the drilling of the holes for the piperack's cement footings, Lyondell's Safety Manager, Darren Swisher, drove past the construction project in a golf cart. He recalled the event in an e-mail that is attached to the deposition of Lyondell's South Region Health, Safety, and Environmental Manager, Morgan French.

Mr. Swisher remembers driving along a roadway near the piperack project, and smelling what seemed like ammonia. He went up to the Ron Williams's crew, and they made comments to him about the smell as well. He then took air samples inside the already dug holes. The air samples were taken at different depths, starting inside the holes and working up to one foot above the holes. He states that he was picking up high readings of ammonia inside the holes, and lower readings above the holes. He states that the levels of ammonia at a height of one foot above the holes did not meet or exceed the Occupational Safety and Health Administration's exposure limits, but he did recommend to Lee Douget that he supply the workers with respirators. Jamie Venable verifies that this event took place in one of the memos in the files of Ron Williams Construction.

The Trent Plaintiffs have filed a negligence claim against Lyondell and Olin. Under Louisiana law, in order for the plaintiffs to prevail on a negligence claim they must prove all five elements of the "duty-risk" analysis. *Long v. State ex rel Dep't of Transp. and Dev.*, 04-485, p. 21 (La. 6/29/05), 916 So.2d 87, 101 (citation omitted). The five elements of the duty-risk analysis are:

> (1) proof that the defendant had a duty to conform his conduct to a specific standard (the duty element); (2)

2

proof that the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) proof that the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) proof that the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) proof of actual damages (the damages element).

*Id*. (citations omitted).

Lyondell and Olin submitted the motion for summary judgment arguing that the Trent Plaintiffs could not prove a number of essential elements of their negligence claim. They argue that the Trent Plaintiffs have presented no direct evidence to show a causal link between the injuries alleged and the work performed on the piperack project. There is no direct evidence in the record of soil samples confirming toxic contamination of the soils the men were digging in; there are no certified reports from physicians confirming that the injuries suffered are due to exposure to toxic substance; and, there is no direct evidence to show that the injuries occurred on the days the men were digging at the site of the digging.

The legal doctrine of *res ipsa loquitur* allows "an inference of negligence to arise from the common experience of the factfinder that such accidents normally do not occur in the absence of negligence." *Cangelosi v. Our Lady of the Lake Reg'l Med. Ctr.*, 564 So.2d 654, 660 (La.1989) (citation omitted). Our law permits a court to apply this doctrine in negligence cases, when appropriate. La.Civ.Code art. 2371.1. "The doctrine applies only when the facts of the controversy 'suggest negligence of the defendant, rather than some other factor, as the most plausible explanation of the accident.'" *Id*., quoting *Montgomery v. Opelousas Gen. Hosp.*, 540 So.2d 312 (La.1989).

Under *res ipsa loquitur*, a plaintiff can make a prima facie case of negligence against the defendant using circumstantial evidence if it shows that the

3

type of injury sustained would not have occurred in the absence of negligence. *Cangelosi*, 564 So.2d at 665. Circumstantial evidence is defined as, "'evidence of one fact, or of a set of facts, from which the existence of the fact to be determined may reasonably be inferred.' W. PAGE KEETON, ET AL., PROSSER & KEETON ON THE LAW OF TORTS § 39, at 242 (5th ed.1984)." *Lawson v. Mitsubishi Motor Sales of America, Inc.*, 04-839, p. 4 (La.App. 3 Cir. 12/29/04), 896 So.2d 149, 154, *writ granted*, 05-257 (La. 4/29/05), 901 So.2d 1044. *Res ipsa loquitur* allows the plaintiff to use only circumstantial evidence to prove negligence on the part of the defendant by a preponderance of the evidence, which is the burden of proof required to prove negligence. *Cangelosi*, 564 So.2d at 665. The trier of fact determines the applicability of the doctrine by applying the facts and circumstantial evidence to the three-part *res ispa loquitur* analysis.

> For *res ipsa loquitur* to apply, "the injury must be of the type which does not ordinarily occur in the absence of negligence". . . . In addition to establishing that the injury suffered does not normally occur in the absence of negligence, a plaintiff must show that the negligence of someone other than the defendant is not a more probable cause of the injury and that the negligence was within defendant's duty to the plaintiff. A showing that the injury causing instrumentality was under the defendant's control is generally sufficient to demonstrate that the defendant's negligence was within the scope of his duty to the plaintiff.

*Perkins v. Wurster Oil Corp.*, 04-692, p. 5 (La.App. 3 Cir. 11/10/04), 886 So.2d 1229, 1233, *writ denied*, 04-3011 (La. 2/18/05), 896 So.2d 35. (Citations omitted).

Without hard data to prove the existence of chemicals in the soils in which they were digging, the Trent Plaintiffs urge us to apply the circumstantial evidence in the record to the three-part *res ipsa loquitur* analysis.

First, are these the kinds of injuries that would not occur in the absence of negligence? Noxious fumes do not usually emanate from the ground in the

4

absence of negligence on the part of someone. People are not usually injured from fumes coming up out of the ground they just dug unless someone has been negligent. Common sense tells us that soil does not normally smell of ammonia, let alone a smell strong enough to make people sick and lure the safety supervisor over to explore the source of the odor in the absence of negligence.

Common sense also informs the conclusion that ammonia is an irritant when inhaled, or when it comes in contact with the skin—anyone cleaning up after a hurricane can attest to that fact. The Material Safety Data Sheet (MSDS) for ammonia lists some of the potential health effects that can be experienced when it is inhaled: burning sensation, coughing, wheezing, shortness of breath, headache, nausea, and vomiting. Contact with the skin can cause pain, skin redness, and irritation. These are some of the same symptoms reported by the Trent Plaintiffs after noticing the smell of ammonia coming from the holes they were digging on the Lyondell and Olin property.

Therefore, I conclude, as we did in *Perkins* where a man spontaneously burst into flames while putting gasoline in his car, that performing a mundane task such as digging in soil should not ordinarily cause respiratory injuries due to the inhalation of fumes and odors emanating from that soil without someone being negligent.

That brings me to the second step in the *res ipsa loquitur* analysis, i.e., did the Trent Plaintiffs sufficiently exclude their own, or any other third parties' responsibility for the accident? The third circuit summarized the Louisiana Supreme Court's guidance on this issue in our decision in *Perkins*, that "unless the 'facts and inferences point so strongly and overwhelmingly' in Defendants' favor, the finder of

fact should determine whether or not the *res ipsa* inference is proper." *Perkins*, 886 So.2d at 1234, citing *Cangelosi*, 564 So.2d at 666-67.

Lyondell's Morgan French stated in his deposition that Lyondell did indeed use ammonia as part of their industrial processes. A reasonable person could presume that ammonia might be present on Lyondell's premises. There are three waste-dump landfills surrounding the area in which the Trent Plaintiffs were digging. One of the landfills was only 50-100 feet away from the piperack project. There was a report of contaminated soil leaking from this landfill about ten years prior (1988) to the start of the piperack project. There was also a report of contaminated groundwater detected down-gradient from this same landfill in 1992. There is no testimony or evidence in the record to indicate that the Trent Plaintiffs nor any other third party put ammonia in the soils, or that they injured themselves. Therefore, the facts and circumstantial evidence in this matter do not overwhelmingly favor Lyondell and Olin.

Lastly, is the negligence of Lyondell and Olin within the scope of their duty to the Trent Plaintiffs? The land on which these injuries allegedly occurred was within the exclusive control of Lyondell and Olin. Following our reasoning in *Perkins*, the fact that the instrumentality which caused the alleged injury was in the exclusive control of Lyondell and Olin indicates that their purported negligence was within the scope of their duty to the Trent Plaintiffs.

Without having to make any credibility determinations, evaluating testimony, or weighing evidence, based on the facts and the circumstantial evidence in the record I conclude that the three elements of a *res ipsa loquitur* analysis are present in this case. Therefore, under these specific facts and circumstances, based

on all of the evidence found in the record and not solely on the allegations of the Trent Plaintiffs, the doctrine of *res ipsa loquitur* applies to this case.

Since *res ipsa loquitur* applies to the facts of this case, there is now a presumption that Lyondell and Olin were negligent. Based on that presumption, the burden of production shifts back to Lyondell and Olin to produce evidence from which a reasonable trier of fact could conclude that they were not negligent. *Perkins*, 886 So.2d 1229. Summary judgment would not be appropriate in this case since the application of *res ipsa loquitur* supplies genuine issues of material fact: the presumption of negligence on the part of these two defendants.

For the foregoing reasons, I dissent.