DeGruy vs. Aiken & Co.

## No. 10,760.

### CHARLES DeGRUY VS. JOS. A. AIKEN & Co. [1]

Under a motion to dismiss filed in this court, the solvency of the surety on an appeal bond can not be considered. That is a question primarily for the court *a qua*, and will be considered here only on appeal taken from the judgment thereon, and when said appeal is regularly tried and submitted.

In an appeal from a judgment rendered *in solido* against several defendants, it is sufficient if they all join as principals in the appeal bond and bind themselves to satisfy whatever judgment shall be rendered against them, otherwise that the surety shall be liable in their place. The nature of their obligations under the bond will depend on the final judgment rendered. If that shall condemn them *in solido*, they and their surety will be so bound, and it was unnecessary that the bond should expressly stipulate a solidary liability.

The joinder of the husbands of defendant married women merely operates the required marital authorization, and is otherwise harmlessly superfluous.

The authority of the General Assembly to grant to corporations the right to make and maintain wharves has long been settled, as well as the authority of the corporations and lessees from them to build wharves with inclines or aprons.

An incline or apron of a wharf is not a safe place to walk upon on a dark night, after a rain, and those who venture on them, without the least necessity, at such times, and when made slippery by the rainfall, assume risks precluding them from recovering damages.

$\mathbf{A}$PPEAL from the Civil District Court for the Parish of Orleans. *King, J.*

### *A. L. Tissot* and *Branch K. Miller* for Plaintiff and Appellee:

In a suit for damages for personal injuries, a defendant who pleads contributory negligence admits his own negligence. 42 An. 4; Am. and Eng. Encycl. of Law, p. 18; 34 An. 1088; 32 An. 617; 38 An. 116.

A contractor sued for damages caused by a defect in public work, which he agreed to keep in repair, can not urge want of notice of the defect, where he denies that the defect existed. 37 An. 492-495.

A contractor who, under a law requiring the leasing of a public work, becomes lessee thereof with an engagement to keep the work in good repair and condition, is held to a higher measure of care than a municipal corporation, and for damages caused by a breach of his obligation, may be held without notice of non-repair. 109 Mass. 522; 18 Pick. (Mass.) 357; 63 Pa. St. 296; 22 Pa. St. 384; 73 Pa. St. 491; 7 Mass. 169.

### *Bayne, Denègre & Bayne* for Defendants and Appellants:

It is sufficient to say that the rule to dismiss embraces no such ground, the only grounds being that the form of the appeal bond is not proper, and that the surety is not good and solvent. The first was disposed of by the judgment of this court, the second by judgment *a quo*, and is the only matter now before the court. If any other ground had been before the court below we would have

met it there by evidence, but plaintiff can not now present a new ground for dismissal on a point not raised in his motion, nor presented to the court below.

The right of appeal is a constitutional right, and will be favored, and no appeal dismissed unless the law imperatively commands it. Brewing Co. vs. Boebinger, 40 An. 277; Murrell vs. Murrell, 33 An. 1233; LeBlanc vs. Rougeau, 39 An. 230; 33 An. 271; 30 An. 1127; Coyle vs. Creevy, 34 An. 539.

If there be no evidence in the record, the judgment reciting that it was founded upon the law and evidence adduced, the Supreme Court will assume that the judge *a quo* had before him sufficient evidence to justify his judgment. Succession of Jno. T. Moore, 42 An. 335; Huntington vs. Bordeaux, 42 An. 348.

The parties were not required to have their evidence reduced to writing, or see that a note is made of the evidence adduced. It was competent for them to have secured a statement of facts. Succession of Moore, 42 An. 335.

The lessees of the public wharves of the city of New Orleans are not insurers of the safety of all who go on said wharves; they are only liable for failure to exercise reasonable and proper care in the repair and maintenance of the wharves.

It being established by the evidence that defendants exercised the highest degree of care and diligence, and did not know of any missing plank, they can not be held liable for injury sustained by plaintiff.

Especially where the burden of proof being upon the plaintiff he fails to prove that the defect was known to defendants, or had existed a sufficient time before the accident to presume knowledge on his part.

Such is the well established rule with regard to the municipal corporations, and defendants assuming the obligations of the city are not bound to a higher degree of care.

As to municipal corporations see: Dillon on Municipal Corporations, 3d Edition, Secs. 1019, 1020, 1015, 1024, 1025; Weightman vs. Washington, 1 Black, 52; Goodenough vs. Oshkosh, 24 Wis. 550; Doulon vs. City of Clinton, 33 Iowa 398; Chicago vs. McCarthy, 75 Ill. 604; Todd vs. Troy, 61 N. Y. 509; Dewey vs. Detroit, 15 Mich. 307.

The apron or inclined portion of the wharves not being a walking place, or intended as such, and being dangerous, especially in wet weather, the plaintiff was guilty of contributory negligence in going upon that portion of the wharves, and can not recover. Weeks vs. R. R. Co., 41 An. 802; Murray vs. Point R. R., 31 An. 491; Schwartz vs. C. C. R. R. Co., 30 An. 15, 34 An. 144, 33 An. 156, 32 An. 616; Deikman vs. R. R. Co., 40 An. 787.

---

ON MOTION TO DISMISS.

The opinion of the court was delivered by

FENNER, J. Nothing is submitted for our present determination except the motion to dismiss filed in this court.

The grounds of the motion are the following:

That the appeal bond filed by the defendants and appellants from said final judgment is defective in form and substance, in this:

1. That while the said judgment casts the defendants *in solido*, the

bond of appeal was given by them jointly, and the surety guarantees their payment of the judgment jointly for an aliquot part of said judgment, and that said surety does not guarantee payment of the judgment by said defendants *in solido*.

2. That there were parties included as principals in said appeal bond who are not cast by the judgment.

Another ground is assigned in the motion, viz.: That the surety is not good and solvent, and such as the law requires. 'This, of course, can not be determined by us under a motion to dismiss. It was submitted to the lower court and decided adversely to the appellee, from which decision he has taken a separate appeal. We can not consider the questions involved therein until said appeal shall be tried and submitted. The other grounds above stated have no merit.

The court conforms, in all respects, to the requirements of law.

The judgment appealed from was rendered against the defendant firm and all the members *in solido*. They all join as principals in the bond, and the condition is that they shall prosecute their appeal and satisfy whatever judgment shall be rendered against them, otherwise that the surety shall be liable in their place. The nature of their obligations under the bond will be determined by the final judgment rendered on the appeal. If that condemns them *in solido*, they and their surety will be bound accordingly. It was not necessary that the bond should expressly stipulate a solidary liability.

The complaint that the husbands of some of the married defendants are joined as principals has no foundation. Their joinder was manifestly for the purpose of authorizing their wives, and is, otherwise, harmlessly superfluous.

Motion denied.

ON THE MERITS,

BREAUX, J. The plaintiff sues for $20,000 damages, for injuries caused by falling through an open space in one of the public wharves of the city of New Orleans. In July, 1889, plaintiff, in the night time, went down to the river, at the foot of Canal street, to meet his daughter who was expected on the steamboat Jesse K. Bell, at about half past 10 that night.

While waiting, he had taken a seat, with his two companions, on a marble slab placed on the wharf to be shipped.

In about three-quarters of an hour, it being warm, he left this

DeGruy vs. Aiken & Co.

seat, followed a straight line to the river, nearer its margin, where he took a seat, awaiting the breeze, he states.   On his return to his companions, about midway the incline or apron of the wharf, there being a plank missing, he tumbled over, one of his legs fell in the hole caused by the missing plank; the other held his body on the wharf.

One of the witnesses testifies that the hole was near the water's edge; the other two locate it more than midway up the incline or apron.   The plaintiff was severely bruised by the fall; three of his ribs were fractured, and he at the time greatly suffered.   He was confined nineteen days to his room, under medical treatment.   His occupation is that of a cierk; he receives a salary of $1000 per annum.

There was no interruption in the salary during the illness, and since his recovery he has retained his position as clerk.

It is not shown that his usefulness in that capacity has been impaired.

The physician appointed by the court, as expert, by whom he was examined, does not testify that plaintiff's fracture and bruises were permanent.

The defendants are lessees of the wharves of the city of New Orleans, bound as lessees to repair all holes in their flooring, also to mend bulkheads and incline heads immediately after the need of repairs.

Their answer denies the allegations of the petitioner and alleges that if plaintiff sustained any injuries, they were the result of his own negligence.

The case was twice tried before a jury.   The first trial began on the 31st of January, 1890, and occupied several days; verdict was rendered in favor of the plaintiff for $3500.

A motion for a new trial was made and a new trial was granted. The second trial took place on the 24th of November, 1890.

The testimony in each trial was substantially the same.

The second jury rendered a verdict for $3000.

The affirmative testimony of the plaintiff and the two witnesses, who were with him when the accident happened, was met on the part of the defense by a number of witnesses who testify that the wharves were kept in good condition by the defendants.

Several of their employés testify that they never heard of the ac-

51

cident or the missing plank, until some time after the accident (more than four months after) ; also three police officers testify substantially to the same effect.

The defendants show that they have a large number of men employed in repairing the wharves and their incline, and that they were in good condition.

They call attention to the fact that it was some four months afterward they became aware of the accident.

Wm. Brieg, Jr., their foreman, in keeping the wharf in order, did not hear of the missing plank until about the week before he testified.

Officer Quilbon, patrolman on the river front at the place, testifies that the incline is not a place to walk on, and only knew of the accident a few weeks before he testified.

Officer Seelhorst, also on the levee, says his beat extended from Canal to Conti, and that there was no missing plank.

N. O'Neil, another officer, whose duty it was to report if there were missing planks, testifies there was none.

R. H. Keene, wharf-master, Second district, having that wharf in charge, never knew of the accident, or of the missing plank, until a long while after.

A. F. Fortier, signal officer, same district, never knew of the missing plank, or the accident, until he was subpœnaed.

All of defendants' witnesses, with reference to the plank, testify to the same effect, and they further state that they do not know that any repair was ever made, or plank placed over the alleged spaces, of which they have not heard or seen anything at all.

The plaintiff predicates his case on the facts attending his fall; his bruises and the injury received, *res ipsa loquitur*, and contends that the presumption of negligence is complete.

That a plank was missing, and that there was a hole in the wharf, as testified by eye witnesses; that this testimony is not denied in a direct manner, or by any witness.

Two grounds of defense are earnestly urged, and will receive our careful consideration.

1. The want of notice of the hole in the incline.

2. The unfitness of the incline, or wharf, to walk upon; the fact that it was not built for that purpose; the danger to pedestrians, es-

803 NEW ORLEANS, MAY, 1891.

DeGruy vs. Aiken & Co.

pecially after a rain, and the fact that the traveled part of the wharf was not obstructed.

1. Recent text writers, on the subject of negligence, held that corporations are not liable, in analogous cases to the one at bar, unless it be shown to have had notice, either express or implied, of the defects.

The suit is rot against the municipality, but against its lessees, and, therefore, we will not concern ourselves about notice, in so far as it may be concerned.

The defendant lessees have contracted to keep the wharf and the incline in good repair.

It is not always essential, to recover, to prove actual notice, or to bring notice to the lessees of municipalities in every case. There are exceptions sustained by our jurisprudence. There are defects that must be seen to at once, and in regard to which the want of notice does not play any figure and is not considered.

2. The next grounds present the difficulty of the case:

The uses of the banks of navigable rivers is public, and every one has the right freely to bring his vessel to unload it, to deposit his goods. C. C. 455.

The authority of the General Assembly to grant to corporations the right to make and maintain wharves, has long been settled, and the construction of the incline, as at present, and its uses, are sanctioned by custom and by law.

The legislation and the ordinances are directed to the importance of offering facilities to navigation.

Mooring ports are provided, fenders, wharves for the public, inclines or approaches. The latter are used by steamboats to launch and land their stages.

The wharf, proper, was safe enough, but it was highly imprudent to leave it and walk on the incline in the night time.

This incline measures thirty-five feet in width and has a fall of nine feet.

It is not a moderate incline. After a rain it is dangerous to walk on it. It had rained on the day of the accident. This apron is built, and has this fall, with unquestioned approval.

Granted that there was a missing plank, as alleged, the plaintiff increased the risk of an accident by venturing on it in the night time.

If in the discharge of a duty, in the performance of any work or

service, an accident were to happen, because of a missing plank on this incline, those having it in charge would be exposed to the payment of damages, but the one hazarding himself to gratify a pleasure assumes certain risks: to recover, it must be shown that the defendants were guilty of negligence; that a dangerous open space was left for some time, prior to the accident, without repair.

No such proof is made in this case.

A case similar in some respects was decided by us not long since; plaintiff's demand was rejected. Stella Burbank vs. Illinois Central R. R., 42 An. 1156.

Neither of the parties knew of the hole prior to the accident which befell the plaintiff; in this case "it is an inevitable accident and the defendant is not responsible." Beach Cont. Neg., p. 35.

If the plaintiff fell between the stringers, at the end of the apron, near the water's edge, about the place his son swears he fell, this would to some extent reconcile the difference in the statement of witnesses. The fall between the stringers, as mentioned, would not give a right of action.

Contributory negligence generally presents issues of facts and of law.

The law applying to this case has been construed by the district judge, as invalidating the verdict in the first trial.

He annulled the jury's finding.

In the second trial, he adhered to the opinion previously expressed, but allowed the verdict to stand.

We would remand the case for a new trial, were it not that our construction of the law would make a third trial useless.

Neither party has prayed to have the case remanded for a new trial.

It is therefore ordered, adjudged and decreed that the verdict be set aside; judgment appealed from be reversed, avoided and annulled, and plaintiff's demand rejected; and that appellee pay cost of both courts.