DISSENT FROM THE DENIAL OF REHEARING
GALLAGHER, J.,
ad hoc, and GONZALES, J., ad hoc, dissenting.
| .With all due deference to the opinion of the majority, we respectfully dissent from the denial of rehearing for the reasons that follow.
The majority opinion makes a monumental change in Louisiana tort law by applying the concept of res ipsa loquitur to an ordinary negligence case. The practical effect of the methodology employed in the majority opinion would be to require a trial court to give a res ipsa loquitur *16 charge any time jurors could have .a reasonable disagreement as to any fact issue. We submit that this ruling is based on a misinterpretation of Cangelosi v. Our Lady of the Lake Regional Medical Center, 564 So.2d 654 (La.1989) (on rehearing).[1]
The majority opinion in this ease correctly cites Cangelosi for the proposition that res ipsa loquitur is applicable only when three criteria are met: (1) the injury is the kind that ordinarily does not occur in the absence of the defendant’s negligence; (2) the evidence sufficiently eliminates other more probable causes of the injury, such as the conduct of the plaintiff or a third person; and (3) the negligence of the defendant falls within the scope of the defendant’s duty to the plaintiff, such as where the defendant had exclusive control of the thing that caused the injury. The majority goes on to quote Cangelosi in its statement of the test to be applied by a trial court when deciding whether to give a jury instruction on res ipsa loquitur: In deciding whether to instruct the jury on res ipsa loquitur, the trial court employs a standard similar to that for directed verdicts. The trial court determines whether the facts and inferences point so strongly and overwhelmingly in favor of one party that reasonable persons could not arrive at a contrary verdict. If reasonable minds could reach different conclusions as to whether the defendant’s negligence caused the plaintiffs injury, then the trial court |3must instruct the jury on res ipsa loqui-tur. The jury then decides whether to infer negligence on the part of the defendant from the circumstances of the case.
However, because the majority opinion failed to examine the relationship between the three res ipsa loquitur criteria vis-a-vis the test' applied by a trial court in determining whether to instruct a jury on res ipsa loquitur, the majority incorrectly applied these principles in the instant case.
The Supreme Court, in Cangelosi discussed res ipsa loquitur as follows:
In an action to recover damages for injuries allegedly caused by another’s negligence, the plaintiff has the burden of proving negligence on the part of the ■defendant by a preponderance of the evidence. Jordan v. Travelers Insurance Co., 257 La. 995, 245 So.2d 151 (1971). Proof is sufficient to constitute a preponderance when the entirety of the evidence, both direct and circumstantial, shows that the fact or causation sought to be proved is more probable than not. Boudreaux v. American Insurance Co., 262 La. 721, 264 So.2d 621 (1972). Thus, the plaintiff 'in this type of action must produce evidence from which the factfin-der can reasonably conclude that his injuries, more probably than not, were caused by the negligence of the particular defendant. The plaintiff, however, does not have to conclusively exclude all other possible explanations for his injuries, because the standard is not proof beyond a reasonable doubt. Restatement (Second) of Torts § 328D (1965); W. Prosser & W. Keeton, The Law of Torts § 39, at 248 (5th ed.1984); Naquin v. Marquette Casualty Co., 244 La. 569, 153 So.2d 395 (1963); Boudreaux v. American Insurance Co., supra. Placing the burden of proof on the plaintiff requires him ultimately to persuade the factfinder concerning the defendant’s negligence, and if the factfinder is undecided after all the evidence has been presented, the plaintiff loses because of the failure of his evidence. Malone, Res Ipsa Loquitur and Proof By Inference, 4 La.L.Rev. 70, 88 (1941).
As previously noted, the proof may be by direct or circumstantial evidence. See Jordan v. Travelers Insurance Co.,
*17 supra. A fact established by direct evidence is one which has been testified to by witnesses as having come under the cognizance of their senses. J. Wigmore, Evidence § 25, at 954 (1983). Circumstantial evidence, on the other hand, is “evidence of one fact, or of a set of facts, from which the existence of the fact to be determined may reasonably be inferred”.FN5 W. Prosser & W. Keeton, supra, § 39, at 242.
FN5. Circumstantial evidence was described in J. Lee & B. Lindahl; Modem Tort Law § 15.42, at 546 (rev. ed.1989), as follows:
Circumstantial evidence allows the court or the jury to reason from circumstances known and proved to establish a disputed fact by inference. Circumstantial 14evidence does not directly prove the existence of a fact, but gives rise to a logical inference that such a fact does exist.
It has been observed that circumstantial evidence consists of a number of disconnected and independent facts from several witnesses and sources, which converge toward the fact in issue as a common center. Circumstantial evidence has substance because the factfinder, court or jury, may make reasonable inferences from certain proof. Circumstantial evidence is nothing more than one or more inferences, which may be said to reasonably arise from a series of proven facts. ...
Use of circumstantial evidence and the deductions and inferences arising therefrom is a common process for establishing liability in negligence cases. Malone, supra, at 71. However, the inferences drawn from the circumstantial evidence must cover all the necessary elements of negligence, and the plaintiff must still sustain the burden of proving that his injuries were more likely than not the result of the defendant’s negligence. W. Prosser & W. Keeton, supra, § 39, at 243.
Negligence on the part of the defendant may be proved by circumstantial evidence alone when that evidence establishes, more probably than not, that the injury was of a kind which ordinarily does not occur in the absence of negligence, that the conduct of the plaintiff or of a third person was sufficiently eliminated by the evidence as a more probable cause of the injury, and that the indicated negligence was within the scope of the defendant’s duty to the plaintiff. Restatement, supra, § 328D. Although the fact that an accident has occurred does' not alone raise a presumption of the defendant’s negligence, the doctrine of res ipsa loquitur (the thing speaks for itself) permits the inference of negligence on the part of the defendant from the circumstances surrounding -the injury.FN6 S. Speiser, Res Ipsa Loquitur § 1:1 (1972). The doctrine of res ipsa loquitur involves the simple matter of a plaintiffs using circumstantial evidence to meet the burden •of proof by a preponderance of the evidence.FN7 McCormick on' Evidence § 342, at 966-67 (E. Cleary 3d ed.1984). The.doctrine merely assists the plaintiff in presenting a prima facie case of negligence when direct evidence is not available. J. Lee & B. Lindahl, supra, § 1522 n. 4. The doctrine permits, but does not require, the trier of fact to infer negligence from the circumstances of the event.FN8 McCormick on Evidence, supra, § 342, at 967; Boudreaux v. American Insurance Co., supra; Larkin v. State Farm Mutual Automobile Insurance Co., supra.
FN6. The phrase res ipsa loquitur was first mentioned in the 1863 English case, Byrne v. Boodle, 2 H. & C. *18 722, 159 Eng.Rep. 299 (1863), where a barrel of flour rolled out of a warehouse window onto a pedestrian. There was no direct evidence that the barrel fell because of any negligence on the part of the warehouse owner. However, the phrase was presented to the jury to explain that, even without direct evidence, the conclusion could |Rbe drawn that the accident was the owner’s fault. Restatement, supra, 328D, comment a; W. Prosser & W. Keeton, supra, § 39, at 243; J. Lee & B. Lindahl, supra, § 15:19.
FN7. In a negligence case there is frequently no direct evidence available to the plaintiff as to the cause of -the injury. This lack of direct evidence to prove the defendant’s negligence “actually furnishes the occasion and necessity for invoking the rule in its strict and distinctive sense”. Larkin v. State Farm Mutual Automobile Insurance Co., 233 La. 544, 97 So.2d 389 (1957). In such a case the plaintiff must present evidence of circumstances surrounding the incident which raises inferences from which the factfinder may reasonably conclude that the defendant caused the plaintiffs injuries.
FN8. Application of the doctrine creates a permissive inference (which the jury may draw or refuse to draw) rather than a presumption (which requires a directed verdict for the plaintiff if the defendant offers no evidence to rebut it). Restatement, supra, § 328D, comment m.
In order to utilize the doctrine of res ipsa loquitur the plaintiff must establish a foundation of facts on which the doctrine may be applied. S. Speiser, supra, § 2:1, at 30. The injury must be of the type which does not ordinarily occur in the absence of negligence. Restatement, supra, § 328D(l)(a). In other words, “the event must be such that in light of ordinary experience it gives rise to an inference that someone must have been negligent”. W. Prosser & W. Kee-ton, supra, § 39, at 244. The basis on which this conclusion is drawn is usually knowledge common to the community as a whole, although in cases such as medical malpractice expert testimony may be used to establish this principle. Id. at 247; Restatement, supra, § 328D, comment d. The plaintiff does not have to eliminate all other possible causes or inferences, but must present evidence which indicates at least a probability that the injury would not have occurred without negligence.. W. Prosser & W. Keeton, supra, § 39, at 248; S. Speiser, supra, § 2:4.
The facts established by plaintiff must also reasonably permit the jury to discount other possible causes and to conclude it was more likely than not that the defendant’s negligence caused the injury. Restatement, supra, § 328D(l)(b); S. Speiser, supra, § 2:5. Again, the plaintiff does not have to eliminate completely all other possible causes, but should sufficiently exclude the inference of his own responsibility or the responsibility of others besides the defendant in causing the accident.FN9 The inference of negligence points to the defendant when the conduct of others is eliminated as a more probable cause. Restatement, supra, § 328D, comment I; W. Prosser & W. Keeton, supra, § 39, at 254. The plaintiff must show not only that an accident occurred or that the accident was caused by the negligence of [ fisomeone, but also that the circumstances warrant an inference of defendant’s negligence.
FN9. Of course, with the advent of comparative fault, the effect of any negligence on the plaintiffs part is *19 simply to reduce recovery and not to relieve the defendant of liability.
The plaintiff must also establish that the defendant’s negligence indicated by the evidence falls within the scope of his duty to the plaintiff. Restatement, supra, § 328D(l)(c). This is often, but not necessarily, proved by a showing that the defendant was in exclusive control of the injury-causing instrumentality.
Use of the doctrine of res ipsa loqui-tur in a negligence case, as in any case involving circumstantial evidence, does not relieve the plaintiff of the ultimate burden of proving by a preponderance of the evidence all of the elements necessary for recovery. J. Wigmore, supra, § 2509. When all the evidence is in, the question for the jury is whether the preponderance of the evidence is with the plaintiff. Larkin v. State Farm Mutual Automobile Insurance Co., supra; Sweeney v. Erving, 228 U.S. 233, 33 S.Ct. 416, 57 L.Ed. 815 (1913).
The doctrine of res ipsa loquitur is applied after all of the evidence has been presented. King v. King, 253 La. 270, 217 So.2d 395 (1968). The trial judge initially determines whether the jury could reasonably infer from the circumstances that the plaintiffs injury was caused by the negligence of the defendant. If the judge determines that reasonable minds could reach different conclusions, it is the function of the judge to instruct the jury on the doctrine, and it is the function of the jury to decide whether to draw, the inferences or not. FN10 Restatement, supra, § 328D(2), comment 1; W. Prosser & W. Keeton, supra, § 39, at 243.
FN10. Restatement, supra, § 328D(3), states that “[i]t is the function of the jury to determine whether the inference is to be drawn in any case where different conclusions may reasonably be reached”. Once the judge submits the case to the jury, that body determines whether the inference of negligence should be accepted or rejected. It is at this time that the plaintiffs burden of proof comes into play. Malone, supra, at 88. If the jury accepts the inferences arising from the circumstances surrounding the injury as making it more likely than not that the cause of the accident was the defendant’s negligence, then the plaintiff has satisfied his burden of proof. If the inferences accepted by the jury do not support such a conclusion, or if the jury is undeeidéd, the plaintiff loses.
Thus, the standard to be applied by the trial judge in deciding whether to instruct the jury on res ipsa loquitur is the same standard used in deciding whether to grant a directed verdict, namely, whether the facts and inferences point so strongly and overwhelmingly in favor of one party that reasonable men could not arrive at a contrary verdict. Breithaupt v. Sellers, 390 So.2d 870 (La.1980); 9 C. Wright & A. Miller, Federal Practice and Procedure, § 2524, at 545 (1971). If reasonable minds could reach different conclusions on whether the defendant’s negligence caused the plaintiffs injury, then the judge must present the issue to the jury and instruct the jury on the doctrine of res ipsa loquitur.
Cangelosi v. Our Lady of the Lake Regional Medical Center, 564 So.2d at 664-67.
It is obvious from the supreme court’s discussion of res ipsa loquitur that the analysis required to assess the applicability of the doctrine is sequential. First, the court determines whether the facts of the case under consideration warrant application of the doctrine by concluding: (1) the injury is the kind that ordinarily does not *20 occur in the absence of the defendant’s negligence; (2) the evidence sufficiently eliminates other more probable causes of the injury, such as the conduct of the plaintiff or a third person; and (3) the negligence of the defendant falls within the scope of the defendant’s duty to the plaintiff, such as where the defendant had exclusive control of the thing that caused the injury. Then, and only then, can a decision be made as to whether the jury should be instructed on the doctrine, by considering: whether “the jury could reasonably infer from the circumstances that the plaintiffs injury was caused by the negligence of the defendant^] ... [i]f the judge determines that reasonable minds could reach different conclusions, it is the function of the judge to instruct the jury on the doctrine, and it is the function of the jury to decide whether to draw the inferences or not.”
The jurisprudence has generally inferred, by applying this sequential approach, that a determination of whether res ipsa loquitur is applicable should be made before considering whether a jury instruction on the doctrine is warranted. The Third Circuit has stated:
Before a res ipsa loquitur instruction is given, the plaintiff must establish that the doctrine is applicable. [Plaintiffs] contend they |shave met the perquisites [sic] of a res ipsa loquitur instruction. ... As a prerequisite to invoking the res ipsa loquitur doctrine, [plaintiffs] had to not only present evidence that it was more probable than not that the complained of injury would not have occurred in the absence of negligence on the part of [defendant], but also sufficiently excluded their own negligence as well as that of third parties.
Williamson v. St. Francis Cabrini Hosp. of Alexandria, 99-1741 (La.App. 3 Cir. 5/10/00), 763 So.2d 50, 54-56, writ denied, 2000-2149 (La.10/6/00), 771 So.2d 83. See e.g. Perkins v. Wurster Oil Corp., 2004-692 (La.App. 3 Cir. 11/10/04), 886 So.2d 1229, writ denied, 2004-3011 (La.2/18/05), 896 So.2d 35; Bradbury v. Thomas, 98-1678 (La.App. 1 Cir. 9/24/99), 757 So.2d 666; Denton v. Critikon, Inc., 95 1602 (La.App. 1 Cir. 5/10/96), 674 So.2d 1169; Seals v. Gosey, 565 So.2d 1003 (La.App. 1 Cir.), writ denied, 569 So.2d 983 (La.1990); Lucas v. St. Frances Cabrini Hosp., 562 So.2d 999 (La.App. 3 Cir.), writs denied, 567 So.2d 101, 103 (La.1990); Oswald v. Rapides Iberia Management Enterprises, Inc., 452 So.2d 1258 (La.App. 2 Cir.), writ denied, 457 So.2d 14 (La.1984).
In the instant case, the predicate analysis does not result in a conclusion that res ipsa loquitur can be applied (i.e. all 3 res ipsa loquitur factors are not present); therefore, the second line of inquiry can never be reached in this case (i.e. whether the jury should be instructed on the doctrine). Not only can the injury in the present case occur in the absence of the defendant’s negligence, but the evidence does not sufficiently eliminate other more probable causes of the injury, such as the conduct of the plaintiff or a third person.
There are many reasons one can fall while walking across the yard of a residence other than negligence; thus, the doctrine of res ipsa loquitur is typically not available in such a case. See Cruda v. State Farm Ins. Co., 98-1929 (La.App. 1 Cir. 9/24/99), 754 So.2d 270. Plaintiff simply failed to show that negligence on the part of the defendant was the most plausible explanation for the accident that | ^occurred in this case.[2] See Harper v. *21 Advantage Gaming Co., 38,837 (La.App. 2 Cir. 8/18/04), 880 So.2d 948; Martinez v. Schumpert Medical Center, 27,653 (La.App. 2 Cir. 5/10/95), 655 So.2d 649. Nor do the circumstances warrant an inference that more probably than not the accident was caused by the defendant’s negligence; the plaintiffs own conduct or that the accident was due to some other cause was not eliminated as a probable cause. See Taylor v. CNA Ins. Group, 300 So.2d 479 (La.1974); Restatement (Second) of Torts, § 328D; Restatement (Third) of. Torts: Liab. Physical Harm § 17. Moreover, there was direct evidence in this case on virtually every point in contention. Res ipsa loquitur is, of course, irrelevant when a body of direct evidence is available explaining the activity leading to the injury. McCann v. Baton Rouge General Hospital, 276 So.2d 259, 261 (La.1973). See also Lawson v. Mitsubishi Motor Sales of America, Inc., 2005-0257 (La.9/6/06), 938 So.2d 35, 49; William E. Crawford, Tort Law, in 12 Louisiana Civil Law Treatise § 6.4, citing Walker v. Union Oil Mill, Inc., 369 So.2d 1043, 1048 (La.1979).
No published case in Louisiana has applied res ipsa loquitur in an ordinary[3] slip or trip and fall case. See Cruda v. State Farm Ins. Co., supra (a contractor fell in a sand/gravel area while walking across the yard of a client’s residence); Zeno v. Grady Crawford Const. Co., 94-0858 (La.App. 1 Cir. 3/3/95), 652 So.2d 590, 593, writ denied, 95-0857 (La.5/19/95), 654 So.2d 695 (plaintiff stepped into a hole on the side of a roadway in an area where a utility company had a right of way); Morgan v. City of New Orleans, 94-0874 (La.App. 4 Cir. 12/15/94), 647 So.2d 1308 (a pedestrian tripped on a broken sidewalk); Sumner v. Foremost Ins. Co., 417 So.2d 1327 (La.App. 3 Cir.1982) (plaintiff tripped on her parents’ trailer steps); Stablier v. City of Baton Rouge, 393 So.2d 148 (La.App. 1 Cir.1980) (plaintiffs lawnmower fell into a “chasm” caused by collapse of city drain in his own yard); Jones v. City of Baton Rouge-East Baton Rouge Parish, 388 So.2d 737 (La.1980) (plaintiff tripped on a catchbasin adjacent to a road); Larkin v. U.S. Fidelity & Guaranty Co., 258 So.2d 132 (La.App. 2 Cir.1972) (plaintiff tripped over a gas company’s valve cover box); Goudeau v. Indemnity Ins. Co. of North America, 200 So. 493 (La.App. 1 Cir.1941) (plaintiff fell on a deck at a public swimming pool); DeGruy v. Aiken, 43 La.Ann. 798, 9 So. 747 (La.1891) (plaintiff fell through a hole/missing plank in a wharf/dock).
This dissent submits that this is not the type case that should change the status quo of the jurisprudence. It is not a circumstantial evidence case; plaintiff saw and testified to every aspect of her accident, and defendant’s representatives testified as to all actions taken by the defendant/employees in connection with their work on the plaintiffs property. Nor is this a case where the mechanism of the plaintiffs injury is unknown (as in a medical malpractice case where a plaintiff wakes from surgery with an injury that cannot be explained). Plaintiff herein fell either because of her carelessness or the condition of the premises or because of the defendant’s substandard work; direct evidence as to each alternative cause was presented by the parties. Furthermore, this is not a case where direct evidence of the defendant’s negligence was unavail *22 able. The accident site was within plaintiffs own yard, and she could have secured any necessary expert examination of the site for evaluation of any allegedly improper, unsafe, or hazardous conditions that may have been caused by defendant’s work thereon. Plaintiff failed to obtain such evidence. A plaintiffs failure to obtain available direct evidence does not entitle him/her to the application of res ipsa loquitur. See Trent v. PPG Industries, Inc., 2005-989 (La.App. 3 Cir. 5/10/06), 930 So.2d 324. At the time the instant | n accident occurred or immediately prior thereto, the defendant did not have active or constructive control over the accident site or any superior access to information relating to its cause.
This case is a relatively simple slip and fall incident. The fundamental problem is that when a person slips and falls in his own yard, there is no inference of negligence by anyone. People often fall on their own property. In this case, the parties agreed on nearly all the facts. There was no dispute that the plaintiff fell and was injured. Likewise, all agreed that the defendant had recently executed repair work on a gas pipeline at the site by digging a four-inch-wide by eighteen-inch-deep trench within two to three feet of the driveway where plaintiff parked her vehicle and subsequently fell. The defendant asserted that the soil was replaced and properly compacted.
The only evidence of how the accident happened came from the direct testimony of the plaintiff. She did not claim she saw the construction work or how it was carried out. Her statement was that the soil was very soft.[4] She readily admitted it had rained on the day of the accident, and at two points in her direct testimony, she stated that there was mud in the area where she fell. The only real dispute is a difference of degree. Plaintiff contends that the soil was so soft that she sank all the way up to her knee. The defendant contends that the soil was properly compacted and was in reasonable condition given the fact that it had rained. There is hardly any circumstantial evidence in this case. Plaintiffs husband observed the site shortly after his wife’s fall and noticed a footprint. The footprint and the rain are the only items of circumstantial evidence in the case. He took a photograph of the footprint, which was offered in evidence as corroboration of his direct observation. The photograph of the footprint undermines, rather than | ^substantiates, the plaintiffs claim to have sunk all the way up to her knee. It shows only a nominal depression of a footprint in a wet muddy setting. (See Appendix “A” hereto.) The entire issue of causation turns on the question of the consistency of the mud. The resolution of that issue is one entirely of credibility. Did the plaintiff simply slip on wet mud or did she sink to her knee on very soft mud? If the soil was unduly soft, then the workmanship related to defendant’s compaction of the soil was called into question. The determination of this issue revolves on whether plaintiffs testimony can be believed and the photograph showing a slight indentation of her footprint in the soil can be disregarded, or whether the testimony of the workmen is more credible.
The doctrine of res ipsa loquitur is a rule of evidence, the applicability of which is to be determined in each case at the conclusion of the trial. When the doctrine *23 of res ipsa loquitur is applicable to a case, the accident that has caused plaintiffs damages makes out a prima facie case of negligence by the defendant, and the burden is then on the defendant to show absence of negligence on its part. The res ipsa loquitur doctrine is a qualification of the general rule that negligence is not to be presumed but must always be affirmatively proved, and therefore should be sparingly applied, and only in exceptional cases where the demands of justice make that application essential. Res ipsa loqui-tur has no application where all the facts and circumstances appear in evidence. Nothing is then left to inference and necessity for the doctrine does not exist. Being a rule of necessity, it must be invoked only where evidence is absent and not readily available. It is not to be invoked when the evidence is available, and certainly not when it is actually presented. Nor has it any application where the cause of the accident is known and is not in question. Day v. National U.S. Radiator Corp., 241 La. 288, 128 So.2d 660, 665 (1961).
| isSlip and fall accidents are not the “exceptional cases” referred to in Day. As explained in Restatement (Second) of Torts § 328D (1965), comment (c):
The fact that a tire blows out, or that a man falls down stairs is not, in the absence of anything more, enough to permit the conclusion that there was negligence in inspecting the tire, or in the construction of the stairs, because it is common human experience that such events all too frequently occur without such negligence. On the other hand there are many events, such as those of objects falling from the defendant’s premises, the fall of an elevator, the escape of gas or water from mains or of electricity from wires or appliances, the derailment of trains or the explosion of boilers, where the conclusion is at least permissible that such things do not usually happen unless someone has been negligent. To such events res ipsa lo-quitur may apply.
It is further stated in Fireman’s Fund Ins. Co. v. U.S. Fidelity & Guaranty Co., 276 So.2d 754, 757 (La.App. 3 Cir.1973), quoting Studies in Louisiana Torts by Wex S. Malone and Leah Guerry (1970), at p. 253:
The first accepted requirement for application of res ipsa loquitur is that the accident must be one which common knowledge indicates does not ordinarily occur in the absence of negligence. This requirement, which assumes that [the] trier of fact has such common or ordinary knowledge of everyday events, is consistent with the fundamental principle of circumstantial evidence that there must be sufficient basis in fact to conclude that one probability is more reasonable than another. Hence res ipsa loquitur is usually applied to cases in which past experience of ordinary events forms a fund of common knowledge from which the court draws to conclude that negligence was more probably present than not.
See also Boudreaux v. American Ins. Co., 264 So.2d at 628.[5]
*24 It is this common or ordinary knowledge of everyday events which tells the jury, in the instant case, that wet mud is slippery and that people can often fall when they step on it; therefore, such a fall may occur in the absence of negligence. Both possible causes of the fall, put forth in this case, were described to the jury. Which cause is applicable is simply a question of what testimony they believe. | uThere is nothing to infer. There is no doubt that counsel for the plaintiff recognized the conflict in the evidence he presented and sought to boost his client’s credibility with a jury charge that would tell them to infer negligence on the part of the defendant. But what circumstance? The softness of the mud vel non is not based on circumstantial evidence but rather on two opposing direct testimonial claims. The only truly circumstantial evidence, the footprint, does not support the plaintiffs claim. Without resorting to res ipsa loquitur, the court could have instructed the jury as to the ordinary circumstantial evidence rule which could, and probably did, help them decide that the plaintiff had exaggerated her claim to help her case. Since there is usually no bias or interest associated with circumstantial evidence (such as fingerprints, DNA, blood types), it is often more reliable evidence than direct testimony. Here the circumstantial evidence refuted the claim of very soft mud and supported the defendant’s claim of ordinary mud associated with rain on a construction site.[6]
The accident site in this case, and all the evidence connected thereto, was in the complete control of the plaintiff. She faults the defendant for not producing experts. By the time the defendant knew of a possible legal action, the soil had been returned to it natural state by the sun, rain, and heat. There is no evidence that when the defendant tried to accommodate the plaintiff by upgrading the job site conditions they were told of a possible lawsuit. The plaintiff did not know the extent of her injuries until much later. If she believed the degree of softness of the soil was an important issue, she could have easily had other witnesses test, feel, or observe it. Her husband did not even do so; he just took a picture.
|1sEach side who gave direct testimony on the causation issue had an interest in the case. The jury had the opportunity to observe their testimony, their demeanor, and their manner of testifying. It is obvious from their verdict, they did not accept the plaintiffs description of the condition of the soil.
The res ipsa loquitur charge requested by the plaintiff (Requested Jury Instruction No. 20) read as follows:
Res ipsa loquitur is a rule of circumstantial evidence which allows a court to infer negligence on the part of the defendant if the facts indicate the defendant’s negligence, more probably than *25 not caused the injury. Spott v. Otis Elevator Co., 601 So.2d 1355 (La.1992).
Plaintiffs counsel made no argument and gave no reason to the trial court as to why res ipsa loquitur should be found applicable; the requested charge was denied.
At this point it should be noted that we agree with the argument posed on appeal by the defendant; i.e., thát since plaintiff failed to state the grounds for their objection to the trial court’s failure to give the requested res ipsa loquitur instruction, appellate relief on this basis is not available. A ruling in defendant’s favor on this point would render moot consideration of the entire issue of res ipsa loquitur. Louisiana Code of Civil Procedure Article 1793 creates a mandatory rule for preserving an objection to a trial court’s ruling regarding requested jury instructions. In order to preserve the right to appeal a trial court’s refusal to give a requested instruction or its giving of an erroneous instruction, a party must not only make a timely objection, but must state the grounds of his objection. Merely making an objection, without assigning any reasons therefor, is insufficient. Where the objecting counsel fails to state the basis of his objection as required by La. C.C.P. art. 1793, or merely makes a blanket objection, any right to complain on appeal of the trial court’s refusal to give the proposed jury charge(s) is forfeited. Osborne v. Ladner, 96-0863 (La.App. 1 Cir. 2/14/97), 691 So.2d 1245, 1252; Martin v. Francis, 600 So.2d 1382, 1387 (La.App. 1 Cir.1992). See also Sanders v. Bain, 31,362 (La.App. 2 Cir. 12/9/98), 722 So.2d 386, 388; Anderson v. Fowler Trucking, Inc., 506 So.2d 1319, 1324 (La.App. 2 Cir.), writ denied, 512 So.2d 434 (La.1987); Watts v. Aetna Casualty and Surety Company, 309 So.2d 402 (La.App. 2 Cir.), writ denied, 213 So.2d 601 (La.1975).
However, since the majority opinion found no merit in the defendant’s argument that the res ipsa loquitur issue was not properly preserved for appellate review, this dissent must likewise address the res ipsa loquitur issue.
As noted above the requested jury charge cites the Spott case. The Supreme Court in Spott stated:
Res ipsa is a rule of circumstantial evidence which allows a court to infer negligence on the part of the defendant if the facts indicate the defendant’s negligence, more probably than not, caused the injury. Spott argues that the elevator’s falling a few feet and stopping constitutes such an unusual occurrence that the inference should be raised. The court of appeal held the doctrine was not applicable- because the plaintiff failed to prove the negligence of the defendants, more probably than not, caused the accident.
Res ipsa loquitur, as “a qualification of the general rule that negligence is not to be presumed,” must be sparingly applied. Generally, it obtains when three requirements are met: 1) the circumstances surrounding the accident are so unusual that, in the absence of other pertinent evidence, there is an inference of negligence on the part of the defendant; 2) the defendant had exclusive control over the thing causing the injury; and 3) the circumstances are such that the only reasonable and fair conclusion is that the accident was due to a breach of duty on defendant’s part. The second requirement, that the defendant have exclusive control over the thing, has not, in our jurisprudence, been strictly applied. Indeed, it is satisfied if the circumstances indicate that it is more probable than not that the defendant caused the accident and other plausible explanations do not appear to be the probable cause of the accident. The *26 plaintiff, of course, bears the initial burden of proof.
Spott v. Otis Elevator Co., 601 So.2d at 1362 (citations omitted).
The judge gave, without objection, a charge (presumably at the request of the defense) that the mere fact that an accident had occurred did not mean that anyone was necessarily negligent. This is tantamount to stating that negligence is 117not presumed. Such a charge is diametrically opposed to one which says “res ipsa loqui-tur is a rule of circumstantial evidence which allows a court to infer negligence on the part of the defendant..” To tell a jury that negligence is not presumed and at the same time tell them that negligence can be inferred is á contradiction which can only confuse a jury. It is also the choice of charges outlined -in the medical malpractice act that was at issue in Cangelosi,[7] The statute requires the judge in such a case to give one of these charges, and it is the issue that the Cangelosi court was addressing, as noted above.
As quoted hereinabove, the supreme court in Cangelosi gave the following test for use by a trial court in deciding whether the instruct a jury on rest ipsa:
The doctrine of res ipsa loquitur is applied after all of the evidence has been presented. King v. King, 253 La. 270, 217 So.2d 395 (1968). The trial judge initially determines whether the jury could reasonably infer from the circumstances that the plaintiffs injury was caused by the negligence of the defendant. If the judge determines that reasonable minds could reach different con-elusions, it is the function of the judge to instruct the jury on the doctrine, and it is the function of the jury to decide whether to draw the inferences or not. Restatement, supra, § 328D(2), comment 1; W. Prosser & W. Keeton, supra, § 39, at 243.
Thus, the standard to be applied by the trial judge in deciding whether to instruct the jury on res ipsa loquitur is the same standard used in deciding whether to grant a directed verdict, namely, whether the facts and inferences point so strongly and overwhelmingly in favor of one party that reasonable men could not arrive at a contrary verdict. Breithaupt v. Sellers, 390 So.2d 870 (La.1980); 9 C. Wright & A. Miller, Federal Practice and Procedure, § 2524, at 545 (1971). If reasonable minds could reach different conclusions on whether the defendant’s negligence caused the plaintiffs injury, then the judge must present the issue to the jury and instruct the jury on the doctrine of res ipsa loquitur.
Cangelosi v. Our Lady of the Lake Regional Medical Center, 564 So.2d at 666-67 (footnote omitted). Because the quoted language, confected by the Cangelosi court, is not true to the source, the somewhat distorted depiction that resulted has produced difficulties in application for the lower courts, as evidenced by the majority opinion in the instant case. Although Cangelosi cites the Restatement (Second) of Torts as its authority for the jury instruction test, the Restatement in fact provides:
§ 328D. Res Ipsa Loquitur
*27 (1) It may be inferred that harm suffered by the plaintiff is caused by negligence of the defendant when
(a) the event is of a kind which ordinarily does not occur in the absence of negligence;
(b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and
(c) the indicated negligence is within the scope of the defendant’s duty to the plaintiff.
(2) It is the function of the court to determine whether the inference may reasonably be drawn by the jury, or whether it must necessarily be drawn.
(3) It is the function of the jury to determine whether the inference is to be drawn in any case where different conclusions may reasonably be reached.
Comment (1) to this section provides:
Comment on Subsections (2) and (3):
1. The rules stated in Subsections (2) and (3) are, respectively, special applications of the rules stated in § 328B(a) and 328C(a). They are stated in this Section in order to make it entirely clear that it is the function of the court to determine, in the first instance, whether the jury can reasonably draw the inference, or whether it must necessarily be drawn, and that where different conclusions may reasonably be reached it is the function of the jury to decide whether the inference is to be drawn or not.
It is obvious that this section of the Restatement, along with the comment, only addresses when a judge should tell the jury they can versus when they must draw the inference. The reference in this authority to “different conclusions [that] may reasonably be reached” is directed only to the jury and not to the judge. The [ 1^Restatement does not suggest what test the judge employs in deciding which instruction to give.
Such an explanation has been made by courts in other states, such as appears in Quinby v. Plumsteadville Family Practice, Inc., 907 A.2d 1061, 1075-76 (Pa.2006):
As noted, [Restatement (Second) of Torts ] § 328D(2) provides that “It is the function of the court to determine whether the inference may reasonably be drawn by the jury, or whether it must necessarily be drawn.” .... Further, § 328D(3) provides that “[i]t is the function of the jury to determine whether the inference is to be drawn in any case where different conclusions may reasonably be reached.” Therefore, it is apparent that the Restatement contemplates that there will be circumstances such that the inference of negligence must be drawn, and in those circumstances, where there are no material facts in dispute and different conclusions may not reasonably be reached, the court may direct the jury to find for the plaintiff. We believe that this is such a case, and, pursuant to § 328D(2) and (3), the evidence demonstrates that the inference of negligence must be drawn, and different conclusions may not reasonably be reached. Restatement (Second) of Torts, § 328D cmt. L (providing that § 328D(2) and (3) are intended to “make it entirely clear that it is the function of the court to determine, in the first instance, whether the jury can reasonably draw the inference, or whether it must necessarily be drawn, and that where different conclusions may reasonably be reached it is the function of the jury to decide whether the inference is to be drawn or not”).
*28 We believe the section of the Restatement and comment thereto, quoted by the Cangelosi court, should be interpreted as follows:
1. When there is overwhelming evidence that res ipsa loquitur applies, based on the facts presented and the jurisprudence noted above, the judge tells the jury that they “must” make the inference.[8]
2. When the plaintiff has presented a preponderance of evidence that res ipsa loquitur applies, the judge tells the jury they “may” make the inference.
lanOf course there is a third possibility, and that is when the judge determines that the plaintiff has not shown by a preponderance of evidence, using the jurisprudence and factors noted above, that res ipsa lo-quitur applies, then he should not mention the inference at all before the jury because it would not be the law applicable to the case.
The Cangelosi opinion addresses for the first time in our jurisprudence, the standard the trial judge should utilize in determining the applicability of the res ipsa loquitur charge in a malpractice case. Justice Lemmon’s opinion clearly states that “the standard to be applied by the trial judge in deciding whether to instruct the jury on res ipsa loquitur is the same standard used in deciding whether to grant a directed verdict, namely, whether the facts and inferences point so strongly and overwhelmingly in favor of one party that reasonable men could not arrive at a contrary verdict.” However, Justice Lem-mon cites no direct authority for applying this standard. The authorities he cites: Breithaupt v. Sellers, 390 So.2d 870 (La.1980); 9 C. Wright & A. Miller, Federal Practice and Procedure, § 2524, at 545 (1971).
These authorities deal only with what is the test for a directed verdict and do not have anything to do with res ipsa loquitur or the standard a trial judge should use in deciding when to give the res ipsa loquitur charge. This high standard appears to be created for the first time here and, as pointed out below is subscribed to only by Justice Lemmon. The Breithaupt case is the famous “hunter orange” case where the court discusses the then new directed verdict law, gives a definition, and reverses the lower court which granted it. There is no reference to res ipsa loquitur in the case. The section in Wright & A. Miller is only a discussion and definition of the comparable federal provisions on directed verdict.
Under this directed verdict test, a defendant seeking to prevent the applicability of the principles of res ipsa loquitur, and thus the jury charge, would l21have to prove by overwhelming evidence that res ipsa loquitur is not applicable to the case, despite the fact that the plaintiff has the burden of proving the applicability of the res ipsa loquitur doctrine. In any negligence case, where the doctrine is advanced, a plaintiff would merely have to present by their direct evidence (in every slip and fall case there is at least one eye witness, the person who falls), or by expert testimony, that the conduct of the defendant was the cause of the injury. Thus if reasonable men could differ (the other side of the directed verdict test) on the issue of *29 causation it would result in an automatic jury charge on res ipsa loquitur, mandating an inference of negligence on the defendant. A trial judge will always have to decide when to apply res ipsa loquitur, either as the factfinder (when there is no jury) or on a request for directed verdict, or on the request for jury instructions. As long as reasonable minds can differ on any material fact, res ipsa loquitur will be an issue in every case.
It should be noted that this reasoning in the Cangelosi opinion authored by Justice Lemmon is not subscribed to by any other Justice. Justices Marcus and Watson concur and assign different reasons. Justice Cole concurs only in the result. Justices Dixon, Dennis, and Calogero all expressed different views of the meaning of the statute, in two dissents and one concurrence to the original opinion of the court. Basically, this language about the standard a trial judge should use in deciding whether to give a res ipsa loquitur charge in a medical malpractice case is a single-Justice opinion. We find it quite surprising in light of the fact that several Justices express different reasoning in the Cangelosi case that this reasoning should be taken as a. controlling principle of law. This test lends itself to the possibility that another court could take this statement in isolation and completely ignore all the other jurisprudence on the applicability of res ipsa loquitur (and the considerable difference of opinion by the other Justices in the case) and thus sow utter confusion in the minds of trial judges. In the words’ of Justice Marcus’s [gp.concurring opinion: “The high standard imposed on the judge by the majority negates this provision [La. R.S. 9:2794(C) ] and will make the exception the rule.” Cangelosi, 564 So.2d at 669 (concurring opinion).
If the two statements from the Cangelo-si case represent a controlling legal principle and one can ignore the rest of the opinion and ' the vast 'jurisprudence and authorities, the opinions of the other justices in Cangelosi and the fact that the Supreme Court has not followed Justice Lemmon’s words on the test for giving the res ipsa loquitur jury instruction, it would be applicable in all cases and the majority opinion should be the law of this state. The following footnote by Justice Lemmon suggests that it would apply in all cases:
The standard to be used by the trial judge in determining whether it is permissible for the jury to infer negligence by the defendant under the doctrine of res ipsa loquitur in medical malpractice cases (and 'thus whether to instruct the jury on the doctrine) is the same standard used in other negligence cases. The trial judge must instruct the jurors on the doctrine of res ipsa loquitur unless the overall evidence, both direct and circumstantial, point so overwhelmingly in favor of the health care provider that no rational juror could find in favor of the plaintiff. If reasonable minds could reach ■ different conclusions on the evidence, then the trial judge must give the res ipsa loquitur instruction. [Cangelo-si 564 So.2d at 667 n. 12.]
In other words, a trial judge[9] would be required to give a res ipsa loquitur charge *30 in every negligence case, unless he or she grants a directed verdict for the defense.[10]
This is exactly what the majority opinion has done. Mrs. Linnear asked the court to instruct the jury on the res ipsa inference in her claim that the soft mud | ^caused her injury. Indeed, she asks for more than that. Applying the substantial factor test to the issue of causation, it is clear that the work of the defendant combined with the rain was a substantial factor in Mrs. Linnear’s injury even if her own inattention to the hazards were to be considered as well. By asking the court to infer negligence on her claim that her leg sunk all the way up to her knee, she is also asking for an inference in the breach of the standard of care.
The causation and breach of duty issues in this case are very similar to those presented in Cangelosi The factual setting however is significantly different on the control of evidence issue and the malpractice setting. Also significantly different is the Hobson’s choice mandated by the malpractice statute on jury charges. A more important difference in the cases is the issue of credibility.- In Cangelosi, there were no significant direct evidence contradictions between the parties. Nearly all the witnesses were credible; the only difference was the opinions of the experts. In the instant case, the call on credibility controls the entire matter. By deciding to believe or not believe the plaintiff or defense witnesses on the issue of the softness of the soil, one effectively decides the critical issues of causation and breach. By giving the res ipsa loquitur charge of an inference, the plaintiff is asking the court to side with her on her credibility. Credibility issues have always been and should be a jury function. In every case, the judge has to decide the applicable of the law to the case for the purpose of jury instructions. By deciding the credibility call and giving the instruction the majority says Cangelosi requires, the judge is effectively taking the case from the jury and telling them what to do. It would amount to an inappropriate comment on the evidence unless there is a truly res ipsa loquitur setting.
If the directed verdict is the test for the res ipsa loquitur charge under the statute on that side, it should also be the test for the other part of the statute on the | tissue of no presumption of negligence.[11] In Cangelosi there was certainly no overwhelming evidence that injury alone means negligence and thus reasonable minds could differ on that issue and the court would likewise be required to give that conflicting charge. The statute clearly indicates giving one charge or the other when it uses the word “unless.” Why should the directed verdict standard apply only to the res ipsa side of the equation? In most cases, there seldom is overwhelming evidence on either of these issues and under the reasoning of this rule, judges would be required to give conflicting instructions in almost every case.
We believe the confusion occasioned by these two paragraphs in Cangelosi present a compelling ground for reconsideration by the supreme court. We note with interest that in the four Louisiana Supreme Court eases that have been decided since Cange- *31 losi, which discussed the doctrine of res ipsa loquitur, none have reiterated the jury instruction test announced in Cangelosi. See Lawson v. Mitsubishi Motor Sales of America, Inc., 2005-0257 (La.9/6/06), 938 So.2d 35; Salvant v. State, supra; Benjamin ex rel. Benjamin v. Housing Authority of New Orleans, 2004-1058 (La.12/1/04), 893 So.2d 1; Spott v. Otis Elevator Co., supra.
The application of this directed verdict test, on appeal of this case, illustrates the problem in using such an analysis. Having found legal error in the trial court’s failure to give the res ipsa loquitur charge, the majority herein was able to completely retry the case. The majority opinion accepts without question the testimony of the plaintiff despite the conflict with her own photographic evidence, and totally rejects as unbelievable the testimony of the defendant. Further, the majority opinion is internally inconsistent when it states that res ipsa loquitur applies in what is called only a circumstantial evidence case, when the opinion goes on to recite the substantial amount of direct evidence presented. This appeal involves simply a manifest error review, and this appellate court should not impose 12Sits credibility evaluation in place of the jury’s credibility call. Appeals should not be a retrial of a jury’s decisions on credibility. There is good reason for the manifest error rule, and it is the one that should apply in this case. The majority position opens the door to an unprecedented flood of appellant litigation. Indeed the plaintiff was seriously injured and is entitled to a great deal of compassion and sympathy; however, the established jurisprudence of this state should not be turned on its head to reach a desirable result.
The majority opinion merely recites the prerequisites for application of the doctrine of res ipsa loquitur, without an analysis of the specific facts of this case relevant to satisfying those criteria (or rather, under the facts of this case, failing to meet those criteria), and instead by-passes this threshold inquiry to address whether a res ipsa loquitur jury instruction was warranted. Skipping over the determination of whether this is the type of case in which res ipsa loquitur can be applied in favor of the jury instruction test (i.e., if reasonable minds could reach different conclusions as to whether the defendant’s negligence caused the plaintiffs injury, then the trial court must instruct the jury on res ipsa loquitur) will result in a “false positive” in almost every instance. The majority approach essentially holds that whenever there is a question of fact as to whether a defendant is at fault, the jury must be instructed on res ipsa loquitur, which would encompass every jury trial held in negligence cases. As stated herein, we do not believe this approach, though seemingly authorized by the Supreme Court in Cangelosi, is correct.
For these reasons, we submit that the majority opinion mistakenly found res ipsa loquitur applicable in this case.
*32 [[Image here]]

. Unless otherwise noted, any reference herein is to the supreme court’s rehearing opinion.

. "Application of the doctrine is defeated if an inference that the accident was due to a cause other than defendant’s negligence could be drawn as reasonably as one that it was due to *21 his negligence.” Salvant v. State, 2005-2126 (La.7/6/06), 935 So.2d 646, 659.

. Not included within the usage of "ordinary” slip or trip and fall cases are business premises liability cases (such as merchant or health care premises cases), which are governed by special laws and apply a heightened standard of care.

. The plaintiff uses the words "sink hole” to describe the condition of the mud. Sink holes usually manifest themselves without pressure from outside forces. She may have meant that there was a soft spot. Whatever the proper terminology, the softness of the mud was the disputed issue.

. Common knowledge and experience would include reliable news events one watches on television. Recently, the national media showed a slip and fall at the end of a marathon race. The winning runner slipped as he crossed the finish line. He fell on his back and seriously injured his head. It's hard to imagine a person with better legs, balance, and shoes than a man who has just won a twenty-six mile race. The surface was an ordinary city street used by many runners. There are millions of vicarious (TV) witnesses, but no hint of negligence. If this man can fall under these circumstances, it is clear that just *24 about anyone can fall. The concept that just because someone has sustained an injury does not mean that someone is negligent, is based on common sense and everyday experience.

. We note that plaintiff's counsel, on cross examination of a defendant workman, went to great lengths to tiy to establish that his foot was too big to fit in the trench and compact the soil, in an attempt to show that they did not do this. Out of the other side of his mouth, plaintiff's counsel asks the jury to believe that Mrs. Linnear, who was described as being large in stature, stepped into this four-inch trench completely filled with dirt and sank up to her knee. For this to have happened, Mrs. Linnear would have had to strike a trenched area with her foot exactly parallel to the line of the trench. The workmen testified that the soil was very hard. These hard sides to the trench existed at the time of her claimed fall and should have served as a stabilizing factor.

. At issue in Cangelosi was the application of La. R.S. 9:2794(C), which provided:
In medical malpractice actions the jury shall be instructed that the plaintiff has the burden of proving, by a preponderance of the evidence, the negligence of the physician, dentist or chiropractic physician. The jury shall be further instructed that injury alone does not raise a presumption of the physician’s, dentist’s or chiropractic physician’s negligence. The provisions of this Section shall not apply to situations where the doctrine of res ipsa loquitur is found by the court to be applicable.

. This is a good rule and should apply where there truly is a res ipsa loquitur case. In fact this is why the rule was created. In the normal res ipsa loquitur setting, such as a medical malpractice claim where all the events and evidence are in the control of the defendant, this is what should happen. Telling the jury they must infer the negligence of the defendant is not as strong as "must find” or "must conclude,” but it is the strong help that the doctrine was intended to give. Going further might invade the province of the jury.

. This exact issue was not before the trial judge in the instant case. He did not say nor was he asked what test he would employ in deciding to give or not give the charge. He simply denied the requested charge. No argument was made by either side as to why the res ipsa loquitur doctrine should apply and the authority cited by plaintiff did not support its application (all as noted before). More importantly, no one suggested the test the judge should use in deciding to give the charge were he to do so. This is why it is so important that lawyers requesting or resisting a charge should be required to give legal support for their positions. It is equally im *30 portant for trial judges to give at least some reason for their actions or inactions.

. In many cases, if the defendant presents overwhelming evidence that the case is not one subject to the res ipsa loquitur doctrine and thus reasonable men could not differ, then he would likely have enough evidence to sustain a directed verdict on the whole case.

. What is sauce for the goose is sauce for the gander may not be a legal principle but it certainly stands for the idea of fairness and equal justice under the law.